IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| ORLANDO BELL, § | | |
| TDCJ No. 02186208, § | | |
| § | | |
| Petitioner, § | | |
| § | | |
| v. § | | A-23-CV-556-RP |
| § | | |
| BOBBY LUMPKIN, Director, § | | |
| Texas Department of Criminal Justice, § | | |
| Correctional Institutions Division, § | | |
| § | | |
| Respondent. § | | |

## ORDER

Before the Court are Petitioner Orlando Bell's pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1), Respondent Bobby Lumpkin's Answer (ECF No. 9), and Petitioner's Reply (ECF No. 13). Having reviewed the record and pleadings submitted by both parties, the Court denies Petitioner's federal habeas corpus petition under the standards prescribed by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). *See* 28 U.S.C. § 2254(d).

## I. Background

In February 2015, Petitioner was charged by indictment with failure to comply with sex offender registration requirements. The indictment included two enhancement paragraphs listing Petitioner's November 1997 convictions for engaging in organized criminal activity and possession of a controlled substance. (ECF No. 12-13 at 116.) On February 28, 2018, a jury convicted Petitioner of the charge, found the two enhancement paragraphs to be true, and sentenced Petitioner to fifty years imprisonment. *State v. Bell*, No. 14,753 (21st Dist. Ct., Burleson Cnty., Tex. Feb. 28, 2018). (ECF No. 12-13 at 190-91.) The following is a summary of the factual allegations against Petitioner:

1

In 2006, pursuant to a plea agreement, Appellant was convicted of sexual assault and sentenced to five years confinement. Upon his release from prison in August 2011, he submitted his sex offender registration as required by chapter 62 of the Texas Code of Criminal Procedure. At the time, he moved in with his sister who lived in a family-owned house in Caldwell, Texas. Three years later, pursuant to a sex offender compliance check, an investigator with the Texas Department of Public Safety, Robert Neuendorff, attempted to locate Appellant at his registered address in Caldwell on October 29, 2014. When he arrived, he observed that the structure at that address had burned down and was uninhabitable. Based on the condition of the house, Neuendorff began surveillance to determine where Appellant was residing.

On that same day, Neuendorff saw three vehicles on the Caldwell property. One of the vehicles, an SUV, was covered by a tarp. Neuendorff peeked through a hole in the tarp and did not see any signs that a person was living in the SUV. He canvassed the neighborhood and spoke with a distant cousin of Appellant's who would come by daily to care for an elderly relative who was Appellant's neighbor. She told Neuendorff that she saw Appellant "come and go once [in a] a while, but he didn't live there" after the house burned down. Neuendorff did not see Appellant at the registered address on that day.

On November 4, 2014, Neuendorff again went to the Caldwell address and did see Appellant tending to his animals. He did not, however, alert Appellant to his presence. He noticed that Appellant was in a different vehicle than those that were usually parked on the property. When Appellant left, Neuendorff followed him to an address outside the city limits in Tunis, Texas. Neuendorff made another visit to the Caldwell address on November 19th and did not see Appellant there. This time he did encounter a gentleman in the neighborhood and inquired about Appellant. The gentleman was Appellant's cousin and neighbor. He told Neuendorff that after the fire, Appellant came by the Caldwell address "off and on, but he don't live with us." The gentleman believed Appellant was living with his girlfriend. He mentioned that Appellant was at the Caldwell address daily to feed his dogs and tend to other animals and would sometimes sleep in his vehicle, on the premises, at night.

Based on his investigation, Neuendorff began surveillance of the Tunis address and Appellant became suspicious that someone was following him. On November 22, 2014, Neuendorff made a final visit to the Caldwell address but did not see Appellant there on that day. Two days later, Neuendorff concluded that Appellant was not in compliance with his sex offender registration requirements for failing to timely inform his primary registration authority of a change of address. Appellant was arrested on November 25th and Neuendorff conducted a custodial interrogation.

During the interrogation, Appellant claimed the Caldwell address was still his residence. Despite the structure having burned down, he claimed he was living in

2

    one of the vehicles located on his property and that he visited his girlfriend's Tunis address for meals and for personal hygiene reasons. He admitted the vehicle he had been driving belonged to his girlfriend and that he sometimes visited the Tunis address. But he claimed he regularly slept in one of his vehicles at the Caldwell address between 3:00 a.m. and 7:00 a.m. because his girlfriend's grandmother did not want him staying at the Tunis address.

*Bell v. State*, No. 07-18-00173-CR, 2019 WL 6766462 at *2-3 (Tex. Ct. App.--Amarillo, July 24, 2019, pet. granted). Petitioner's conviction was affirmed on direct appeal.[1] *Id.*

    On July 20, 2022, Petitioner executed his pro se state habeas corpus application, listing the following three grounds of relief:

1. The State allowed Officer Neuendorff to make material misrepresentations of his custodial interview with Petitioner during his trial testimony, which affected the outcome of the trial.

2. Petitioner's trial counsel rendered ineffective assistance by failing to object to hearsay testimony.

3. Petitioner's trial counsel rendered ineffective assistance when counsel failed to investigate and call certain exculpatory witnesses.

(ECF No. 12-13 at 11-26.) On October 19, 2022, the Texas Court of Criminal Appeals (TCCA) denied Petitioner's state habeas application without written order. *Ex parte Bell*, No. WR-92,316-02 (Tex. Crim. App. Oct. 19, 2022). (ECF No. 12-17.)

    On May 19, 2023, Petitioner filed his federal habeas petition, listing the same three grounds of relief from his state habeas application; he also seeks an evidentiary hearing. (ECF No. 1.) Respondent Lumpkin answered the petition (ECF No. 9), and Petitioner has replied (ECF No. 13).[2]

---

[1] In Petitioner's direct appeal, the appeals court initially affirmed Petitioner's conviction but reversed and remanded his punishment. The Texas Court of Criminal Appeals granted the State's Petition for Discretionary Review and reversed the appeals court's judgment on punishment. *Bell v. State*, 635 S.W.3d 641 (Tex. Crim. App. 2021). On remand, the appeals court affirmed the punishment and Petitioner did not file a Petition for Discretionary Review. *Bell v. State*, No. 07-18-00173-CR, 2022 WL 420793 (Tex. Crim. App.—Amarillo, Feb. 11, 2022, no pet.).

[2] In Petitioner's reply, he states "Giv[en] Bell's near impossible burden with respect to his [Ineffective Assistance of Counsel] claims, he hereby abdicates those issues with judicial economy in mind." (ECF No. 13 at 1.) Despite this

## II. Standard of Review

Petitioner's federal habeas petition is governed by the heightened standard of review provided by AEDPA. *See* 28 U.S.C. § 2254. Under § 2254(d), a petitioner may not obtain federal habeas corpus relief on any claim that was adjudicated on the merits in state court proceedings unless the adjudication of that claim either: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. *Brown v. Payton*, 544 U.S. 133, 141 (2005). This demanding standard stops just short of imposing a complete bar on federal court re-litigation of claims already rejected in state proceedings. *Harrington v. Richter*, 562 U.S. 86, 102 (2011) (citing *Felker v. Turpin*, 518 U.S. 651, 664 (1996)).

A federal habeas court's inquiry into unreasonableness should always be objective rather than subjective, with a focus on whether the state court's application of clearly established federal law was "objectively unreasonable" and not whether it was incorrect or erroneous. *McDaniel v. Brown*, 558 U.S. 120 (2010); *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003). Even a strong case for relief does not mean the state court's contrary conclusion was unreasonable. *Richter*, 562 U.S. at 102. A petitioner must show that the state court's decision was objectively unreasonable, not just incorrect, which is a "substantially higher threshold." *Schriro v. Landrigan,* 550 U.S. 465, 473 (2007); *Lockyer v. Andrade*, 538 U.S. 63, 75-76 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Richter*, 562 U.S. at 101 (quoting *Yarborough v.*

---

statement, the Court will address the claims as Petitioner exhausted them and raised them in his original petition.

4

*Alvarado*, 541 U.S. 652, 664 (2004)). As a result, to obtain federal habeas relief on a claim previously adjudicated on the merits in state court, Petitioner must show that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id*. at 103. "'If this standard is difficult to meet—and it is—that is because it was meant to be.'" *Mejia v. Davis*, 906 F.3d 307, 314 (5th Cir. 2018) (quoting *Burt v. Titlow*, 571 U.S. 12, 20 (2013)).

### III. Analysis

1. Evidentiary Hearing

In his federal petition, Petitioner seeks an evidentiary hearing as part of his relief. Title 28 U.S.C. § 2254(e)(2) addresses the criteria for when an evidentiary hearing should be held, providing that:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that—
> (A) the claim relies on—
>     (i) a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable; or
>     (ii) a factual predicate that could not have been previously discovered through the exercise of due diligence; and
> (B) the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

Under Rule 8 of the Rules Governing § 2254 Cases, even if a petitioner overcomes the obstacles in § 2254(e)(2), the Court still has discretion as to whether to grant an evidentiary hearing. *Murphy v. Johnson*, 205 F.3d 809, 815 (5th Cir. 2000). In determining whether to grant a hearing, "the judge must review the answer and any transcripts and records of state-court proceedings to determine whether an evidentiary hearing is warranted." *Richards v. Quarterman*, 566 F.3d 553, 562-63 (5th Cir. 2009) (cleaned up). If the Court has sufficient facts to "make an

informed decision regarding the merits of a claim," it may deny the petitioner an evidentiary hearing. *Murphy*, 205 F.3d at 816. When the state court record "precludes habeas relief," a district court is "not required to hold an evidentiary hearing." *Schriro*, 550 U.S. at 464 (2007).

Petitioner's allegations are insufficient to warrant an evidentiary hearing. Moreover, as detailed below, the state habeas record shows Petitioner is not entitled to relief; therefore, no evidentiary hearing is warranted. Petitioner's request for an evidentiary hearing is denied.

2. Prosecutorial Misconduct and *Napue* error (claim 1)

In Petitioner's first claim, he argues the State used material misrepresentations of fact at trial to secure a guilty verdict. Petitioner argues that during her opening statement, the prosecutor made two false statements to the jury: first, that Petitioner could not be found at 507 N. Porter street (the Caldwell address); second, that he never told his sex offender registrar, Ms. Nancy Green, about his new address until after he was arrested. Petitioner further argues that the State solicited false testimony when the officer investigating his case, Mr. Robert Neuendorff, testified that Petitioner knew police were looking for him when Petitioner asked Ms. Green if there was a gray pickup following him around. Petitioner argues the State amplified the impact of this false testimony by restating it during closing argument. Finally, Petitioner argues Mr. Neuendorff falsely testified that Petitioner kept his personal belongings and clothing at his girlfriend's house, and that the State again amplified this false testimony by repeating it during closing.

Petitioner groups all of these allegations together and claims they constitute perjured testimony. However, the prosecutor's opening and closing statements do not involve testimony at all; accordingly, the Court will analyze the allegations regarding the prosecutor's opening and closing statements as prosecutorial misconduct rather than perjured testimony.

6

   a. *Prosecutorial misconduct*

Allegations of prosecutorial misconduct are analyzed in two steps. *Trottie v. Stephens*, 720 F.3d 231, 253 (5th Cir. 2013) (citation omitted). The first is to evaluate whether the prosecutor made an improper remark. *United States v. Fields*, 483 F.3d 313, 358 (5th Cir. 2007) (citation omitted). If so, the second step is to determine whether the defendant suffered prejudice. *Id*. This second inquiry sets a high bar: "Improper prosecutorial comments constitute reversible error only where the defendant's right to a fair trial is substantially affected." *United States v. Ebron*, 683 F.3d 105, 140 (5th Cir. 2012) (quoting *United States v. Holmes*, 406 F.3d 337, 355-56 (5th Cir. 2005)). A criminal conviction should not be "lightly overturned on the basis of a prosecutor's comments standing alone," but rather only when "the prosecutor's remarks cast serious doubt on the correctness of the jury's verdict." *Id*. Thus, in deciding whether serious doubt infects the verdict, the Court considers three factors: "(1) the magnitude of the prejudicial effect of the prosecutor's remarks, (2) the efficacy of any cautionary instruction by the judge, and (3) the strength of the evidence supporting the conviction." *Id*. (quoting *United States v. Mares*, 402 F.3d 511, 515 (5th Cir. 2005)) (internal quotation marks omitted).

The TCCA summarily denied Petitioner's state application for habeas corpus relief without written order. This constitutes an adjudication on the merits subject to deference under § 2254(d). *See Anaya v. Lumpkin*, 976 F.3d 545, 550 (5th Cir. 2020) (citing *Register v. Thaler*, 681 F.3d 623, 626 n.8 (5th Cir. 2012)). Under the AEDPA, the state court's factual findings are presumed correct unless the Petitioner rebuts them with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Because there is no reasoned state court decision for this Court to review, the Court "(1) assumes that the state court applied the proper 'clearly established Federal law'; and (2) then determines whether its decision was 'contrary to' or 'an objectively unreasonable application of' that law."

*Schaetzle v. Cockrell*, 343 F.3d 440, 443 (5th Cir. 2003) (quoting *Catalan v. Cockrell*, 315 F.3d 491, 493 & n.3 (5th Cir. 2002)).

Petitioner has failed to show that the TCCA's decision rejecting this claim was contrary to or an unreasonable application of federal law. A review of the record shows that the prosecutor's remarks during opening and closing were not improper. In Texas, an opening statement serves to inform the jury about the nature of the accusation and to provide a summary of the evidence the State intends to offer. *McGowen v. State*, 25 S.W.3d 741, 747 (Tex. App.--Houston [14th Dist.] 2000). A closing argument in Texas properly includes: (1) a summary of the evidence, (2) any reasonable deductions from the evidence, (3) a response to opposing counsel's argument, and (4) a plea for law enforcement. *Dickson v. State*, 642 S.W.2d 185, 187 (Tex. Crim. App. 1982).

> The prosecutor said the following during her opening statements:
>
> And I want you to think about why sex offenders have to register their address at all. Why do they have to tell the authorities where they reside? It's because we want to know where they are, where they can be found for the protection of our communities.
>
> That address at 507 North Porter is not the address where Orlando Bell could be found. The bulk of his time, his everyday life, even if you believe Mr. Bell, which after hearing the evidence I don't think you will, but even if you believe him, he spent most of the hours of his day in Tunis, Texas, with his girlfriend, Ashley Allen. That was his residence. And he never, never told Ms. Green until after his arrest that he was living in that house. After his arrest he changed his address.

(ECF No. 10-4 at 19-20.) The prosecutor was informing the jury about the nature of the accusation against Petitioner and providing a summary of evidence the State intended to offer. Petitioner does not dispute Mr. Neuendorff's testimony that Petitioner slept in his vehicle at 507 N. Porter from 3 a.m. until 7 a.m. everyday. (*Id*. at 86.) Further, Ms. Green testified that although Petitioner alerted her on November 24, 2014—one day before his arrest—that he was moving to Tunis, Texas, he never specified the address or stated who he would be living with. (*Id*. at 44-45.) Petitioner

8

provides a document in his habeas application which purports to show he changed his address prior to his arrest, thus calling into question the prosecutor's opening statement. (ECF No. 1-4.) However, even if the prosecutor incorrectly stated when Petitioner changed his address, this still does not render the opening remark improper: it still remains a summary of the evidence the prosecutor intended to prove to the jury.

Petitioner also alleges that the prosecutor deceived the jury in closing argument by stating the following:

> And then when [Officer Neuendorff] talks to Mr. Bell about it, Mr. Bell says, "I saw you. Were you there in the silver truck? I called Nancy to see if anyone was looking for me." Because when Mr. Bell saw a law enforcement officer, the first thing he thought was I did something wrong. I better call Nancy. And then he changed his address.

(ECF No. 10-5 at 39.) Petitioner further argues that the prosecutor also amplified Officer Neuendorff's perjured testimony by restating the false claim that Petitioner kept his clothing at the Tunis house. (*Id.* at 36.)

Again, neither of these statements were improper during the prosecutor's closing argument because they constitute a reasonable deduction from the evidence and a summary of the evidence. Petitioner does not deny he told Neuendorff that he called Ms. Green after he noticed Neuendorff's truck following him. Rather, he disputes that he knew Neuendorff was law enforcement since the truck was unmarked and Neuendorff was in plain clothes. But it is not unreasonable to deduce from Petitioner's behavior—contacting his county sex offender registrar—that Petitioner believed Neuendorff was some kind of law enforcement presence. And by stating that Petitioner left his clothes at the Tunis house, the prosecutor was summarizing the evidence introduced in Neuendorff's testimony.

Finally, even if any of the prosecutor's statements were improper, Petitioner fails to show how these statements infected the trial with unfairness and that, without them, there is a reasonable probability that the verdict would have been different. After the close of evidence, the judge read the jury charge to the jury, which contained the following instruction:

> The evidence consists of the testimony and exhibits admitted in the trial. You must consider only evidence to reach your decision. You must not consider, discuss, or mention anything that is not evidence in the trial. You must not consider or mention any personal knowledge or information you may have about any fact or person connected with this case that is not evidence in a trial.
>
> Statements made by lawyers are not evidence. The questions asked by the attorneys are not evidence. Evidence consists of the testimony of the witnesses and materials admitted into evidence.

(ECF N. 10-5 at 8.) The jury was instructed not to consider the statements of the prosecutor as evidence. Juries are presumed to follow their instructions, *Zafiro v. United States*, 506 U.S. 534, 540 (1993) (citation omitted), and thus any potential impropriety was cured by these instructions. Accordingly, the state habeas court was not unreasonable in denying this claim.

  b. *false testimony*

Petitioner claims that Officer Neuendorff committed perjury when he testified that Petitioner spent every night at his girlfriend's house in Tunis, Texas, and left his clothes there. Petitioner alleges the prosecutor used the recording of his custodial interview with Neuendorff as support for this claim, but, per the prosecutor, "the sound was bad." (ECF No. 10-4 at 89.) To support his claim that Neuendorff lied, Petitioner attaches to his petition a transcription of the custodial interview performed by a third-party vendor. In this transcription, Petitioner never states that he left his personal belongings or clothing at the Tunis residence. (ECF No. 1-5 at 11-38.)

In *Napue v. Illinois*, 360 U.S. 264, 269 (1959), the Supreme Court held that a criminal defendant is denied due process when the State knowingly uses false or perjured testimony or

10

allows false testimony to go uncorrected at trial. A petitioner seeking habeas relief based on this type of claim must show (1) the testimony is false, (2) the prosecution knew that the testimony was false, and (3) the testimony was material. *Reed v. Quarterman*, 504 F.3d 465, 473 (5th Cir. 2007); *Kutzner v. Johnson*, 242 F.3d 605, 609 (5th Cir. 2001). False testimony is only material if there was a reasonable likelihood that it affected the jury's verdict. *Giglio v. United States*, 405 U.S. 150, 153-54 (1972); *Barrientes v. Johnson*, 221 F.3d 741, 753 (5th Cir. 2000).

Even if the Court assumes that Officer Neuendorff's testimony is false and the prosecutor knew the testimony was false, Petitioner has failed to show the testimony was material, i.e., that there is a reasonable likelihood that it affected the jury verdict. Petitioner challenged the sufficiency of the evidence in his direct criminal appeal. In overruling Petitioner's challenge, the court of appeals recounted the evidence supporting Petitioner's conviction and never mentioned Neuendorff's testimony about how Petitioner kept his clothing and personal belongings at the Tunis residence. *See Bell*, 2019 WL 6766462 at *3-5. It was therefore not unreasonable for the state habeas court to conclude Petitioner failed to meet his burden under *Napue*, and he fails to rebut the state court's factual findings with clear and convincing evidence to the contrary. Accordingly, this claim is denied.

3. Ineffective Assistance of Trial Counsel (claims 2-3)

In Petitioner's final two claims, he argues his trial counsel provided ineffective assistance when counsel failed to object to prejudicial hearsay testimony and failed to investigate the Tunis home and discover witnesses—specifically Ms. Demetres Carson—who would have testified that he did not live in the Tunis residence. Petitioner attached affidavits from Ms. Carson and Ms. Ashley Allen, his girlfriend who lived at the Tunis home.

The Sixth Amendment to the United States Constitution guarantees citizens the assistance of counsel in defending against criminal prosecutions. U.S. CONST. amend VI. Sixth Amendment claims based on ineffective assistance of counsel are reviewed under the familiar two-prong test established in *Strickland v. Washington*, 466 U.S. 668 (1984). Under *Strickland*, a petitioner cannot establish a violation of his Sixth Amendment right to counsel unless he demonstrates (1) counsel's performance was deficient and (2) this deficiency prejudiced the petitioner's defense. *Id.* at 687-88, 690. The Supreme Court has emphasized that "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

When determining whether counsel performed deficiently, courts "must be highly deferential" to counsel's conduct and a petitioner must show that counsel's performance fell beyond the bounds of prevailing objective professional standards. *Strickland,* 466 U.S. at 687-89. Counsel is "'strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22 (quoting *Strickland*, 466 U.S. at 690). To demonstrate prejudice, a petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. Under this prong, the "likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112 (citing *Strickland*, 466 U.S. at 693). A habeas petitioner has the burden of proving both prongs of the *Strickland* test. *Wong v. Belmontes*, 558 U.S. 15, 27 (2009).

Ineffective assistance of counsel claims are considered mixed questions of law and fact and are analyzed under the "unreasonable application" standard of 28 U.S.C. § 2254(d)(1). *See Gregory v. Thaler*, 601 F.3d 347, 351 (5th Cir. 2010). When the state court has adjudicated the claims on the merits, a federal court must review a petitioner's claims under the "doubly

12

deferential" standards of both *Strickland* and Section 2254(d). *See Woods v. Etherton*, 136 S. Ct. 1149, 1151 (2016) (citing *Cullen*, 563 U.S. at 190). In such cases, the "pivotal question" is not "whether defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Richter*, 562 U.S at 101.

Petitioner's trial counsel answered his allegations in an affidavit submitted to the state habeas court:

> 2. To the allegation of failing to object to hearsay. I do not have a transcript of the trial so I cannot swear what I objected to or did not object to. In the Writ filed by the Applicant there is a quote from my closing argument, but that is an argument that the State had not met their burden in the case, that the investigation was based on hearsay and that the State failed to develop any reliable evidence to prove the case beyond a reasonable doubt, which was our trial strategy, to hold the State to their burden. Our trial strategy was that the Applicant had not changed his residence after his residence burned, but that he was living in his vehicle on the property.
>
> 3. To the allegation of failing to investigate the case. I and my assistant contacted the witnesses the Applicant indicated would have any information on the case, which was eight witnesses. Some of the witnesses would not call back and some of the witnesses, if called to testify, would have proven the State's case. I called to testify the witnesses that would be most beneficial to our trial strategy. Ashley Allen was one of the witnesses that never called me back. She was the significant other of the Applicant and appeared with him at court settings and other times that I spoke to the Applicant on the case. She never gave me a statement, but during the State's investigation of the case, she had spoken to lnvestigator Neuendorff stating that the Applicant stayed with her five days a week, which would have led the jury to believe that he was in fact staying with her. She was subpoenaed as a State's witness. During the trial. I asked the Applicant if he wanted Ashely Allen to testify and he told me no. I never spoke to Demetress Carson and she was not one of the witnesses given to me by the Applicant or any of the other witnesses I spoke to. The Applicant was very involved in his representation, so I had no reason to believe that he would have held back any witnesses that would have helped him. I did drive by the Applicant's residence during the investigation of case. I also spoke to another potential witness, who [was] also a misdemeanor client of mine that had seen the Applicant talking to me during the client's misdemeanor docket, but my client could not verify that the Applicant still lived at the registration address after the fire, so I did not call him as a witness. l hired an investigator shortly before trial, Allen Dickman. He assisted me with witnesses and after he reinterviewed one witness, Pastor Dave Johnson, I did not call him as a witness as his testimony no longer fit with my trial strategy. Pastor Johnson had provided temporary housing for the Applicant after his home burned down, for a period longer than seven days.

13

(ECF No. 12-13 at 113-14.)

Under *Strickland*, a reasonable investigation requires, at minimum, that trial counsel interviews potential witnesses and makes an independent investigation of the facts and circumstances of the case. *Kately v. Cain*, 704 F.3d 356, 361 (5th Cir. 2013). In assessing the reasonableness of counsel's investigation, a heavy measure of deference is applied to counsel's judgments and is weighed along with the defendant's own statements and actions. *Strickland*, 466 U.S. at 691. Trial counsel also has wide latitude in determining trial strategy. *See Ward v. Stephens*, 777 F.3d 250, 264 (5th Cir. 2015). In fact, "[d]efense counsel's 'strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengable.'" *Mejia*, 906 F.3d at 316 (quoting *Rhoades v. Davis*, 852 F.3d 422, 434 (5th Cir. 2017)). The Court is mindful that "*Strickland* does not allow second guessing of trial strategy and must be applied with keen awareness that this is an after-the-fact inquiry." *Granados v. Quarterman*, 455 F.3d 529, 534 (5th Cir. 2006). Thus, an unsuccessful trial strategy does not mean that counsel's performance was deficient. *Avila v. Quarterman*, 560 F.3d 299, 314 (5th Cir. 2009).

The record shows that trial counsel did not object to the hearsay testimony because it was her strategy to show that the vast majority of the State's evidence was hearsay, or "rumors" as she described it in her closing arguments. Further, trial counsel attested that she did not call Ms. Allen because she was listed as a State's witness based on her conversation with Officer Neuendorff, and that Petitioner did not tell her about Ms. Carson despite being actively involved with his defense. The state habeas court appears to have credited trial counsel's affidavit in denying this claim, and Petitioner has failed to rebut this factual finding with clear and convincing evidence in his federal habeas petition. Under *Strickland*, it is Petitioner's burden to show that trial counsel's performance was deficient; the Court presumes counsel "rendered adequate assistance and made all significant

decisions in the exercise of reasonable professional judgment.'" *Burt*, 571 U.S. at 22. Additionally, this Court's review is guided by the AEDPA, under which Petitioner must further show that the state court's application of *Strickland* to his claim was unreasonable. *Richter*, 562 U.S at 101. Petitioner, again, has failed to meet this demanding standard. The state court was not unreasonable when it concluded that trial counsel's trial strategy and investigation did not constitute deficient performance. Accordingly, this claim is denied.

## IV. Certificate of Appealability

A petitioner may not appeal a final order in a habeas corpus proceeding "unless a circuit justice or judge issues a certificate of appealability." 28 U.S.C. § 2253(c)(1)(A). Pursuant to Rule 11(a) of the Rules Governing Section 2254 Cases, the district court must issue or deny a certificate of appealability (COA) when it enters a final order adverse to the applicant. *See Miller-El v. Cockrell,* 537 U.S. 322, 335-36 (2003) (citing 28 U.S.C. § 2253(c)(1)).

A certificate of appealability may issue only if a petitioner has made a substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2). In cases where a district court rejects a petitioner's constitutional claims on the merits, "the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). When a district court rejects a habeas petition on procedural grounds without reaching the constitutional claims, "a COA should issue when the petitioner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.*

In this case, reasonable jurists could not debate the dismissal or denial of Petitioner's § 2254 petition on substantive or procedural grounds, nor find that the issues presented are

adequate to deserve encouragement to proceed. *Miller-El*, 537 U.S. at 327 (citing *Slack*, 529 U.S. at 484). Accordingly, the Court will not issue a certificate of appealability.

It is therefore **ORDERED** that Petitioner's Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2254 (ECF No. 1) is **DENIED**; and

It is further **ORDERED** that a certificate of appealability shall not issue in this case.

SIGNED this 6th day of November, 2023.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE